**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

LATANGELA PHILLIPS,         )
                               )
              Plaintiff,    )
                               )
          v.            )     1:10CV947
                               )
CITY OF CONCORD PARKS AND    )
RECREATION DEPT.,          )
                               )
             Defendant.    )

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the Motion for Remand
(Docket Entry 7) filed by pro se Plaintiff Latangela Phillips
("Phillips"). For the reasons set forth herein, Phillips' Motion
for Remand (Docket Entry 7) is denied.[1]

**I. BACKGROUND**

**A. Factual Background[2]**

In her Complaint, Phillips alleges that she was an employee of
Defendant City of Concord Parks and Recreation Department. (Docket
Entry 1, Ex. A at 2.) She complains that a "customer" had
"displayed abusive behavior, violent behavior, racial harassment
and racist comments" (the "Incident") and that she reported said
Incident to her supervisors on January 4, 2009. (Id.) Phillips
asserts that, in early January of 2009, she also contacted the

---

[1] For the reasons stated in <u>Thomas v. North Carolina</u>, No. 1:10CV226, 2010
WL 2176075 at *6-8 (M.D.N.C. May 21, 2010) (unpublished), the undersigned United
States Magistrate Judge disposes of this matter by order, rather than by
recommendation.

[2] The Court has drawn the facts from Phillips' Complaint as best it could
and will cite to the page number incorporated in the footer of said document by
the Court's Case Management/Electronic Case Filing ("CM/ECF") System.

Recreation Coordinator and the Deputy Director to discuss her report (id., Ex. A at 4), and, on January 16, 2009, she spoke with the City of Concord's Safety Manager who instructed her to complete a "Workplace Violence form" (id., Ex. A at 5).

In Phillips' view, her supervisor gave her a written reprimand "in retaliation of [sic] Safety Complaint reported earlier on same day." (Id.)[3] Phillips pleads that, on January 22, 2009, she filed a grievance related to the Incident and the written reprimand (id., Ex. A at 6) and, on January 28, 2009, she filed a complaint with the City Manager alleging "retaliation by reduction in hours" (id., Ex. A at 15).[4]

Phillips recounts that, on February 6, 2009, she filed an Equal Employment Opportunity Commission ("EEOC") charge against Defendant alleging a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") "due to retaliation by reducing hours, written reprimand, and refusal to meet with [Phillips] or follow City Policy and Parks and Recreation Discipline Policy, and advocating racial harassment." (Id., Ex. A at 6-7.) Phillips alleges that she also filed a complaint with the North Carolina Department of Labor. (Id., Ex. A at 13.)

_____

[3] Phillips states that her supervisor explained that the reprimand was "due to being thirty minutes late and not having badge to clock in on Monday, January 12, 2009." (Docket Entry 1, Ex. A at 12.) Phillips, however, appears to claim that those problems were excused in that, on January 9, 2009, she had met with the Recreation Coordinator about "misplacing badge [sic]" and Phillips was late "due to breakdown of [her] vehicle[.]" (Id., Ex. A at 12-13.)

[4] Phillips, however, maintains that it was not until February 1, 2009, that her "hours was [sic] seriously reduced." (Id., Ex. A at 13 (emphasis omitted)).

In Phillips' view, while utilizing Defendant's grievance process, she "was not satisfied with findings" made by the Recreation Coordinator at Step II, and she proceeded to Step III. (<u>Id.</u>, Ex. A at 6.) She states that, separate from the grievance process, on January 26, 2009, she met with a panel to discuss the Incident. (<u>Id.</u>, Ex. A at 7.)[5]

According to Phillips, in a letter dated February 4, 2009, the Assistant City Manager wrote that Phillips' "complaints" "are similar to [her] grievances. Therefore, it would not be prudent or productive . . . to meet." (<u>Id.</u>, Ex. A at 17.)[6] According to Phillips, she proceeded to file another complaint four days later stating:

> On February 8, 2009, [Phillips] filed Harassment and Retaliation complaint with the City Manager's office alleging Logan Recreation Center supervisor harassed and retaliated against Plaintiff for filing Safety grievance by impeding and blocking movement on February 6, 2009 and aggressively expressing personal feelings about grievances filed which included Logan Recreation Center supervisor's name. [Phillips] also informed administration of incident. Deputy Director emailed [Phillips] a response to complaint. Deputy Director did not follow policy.

(<u>Id.</u>, Ex. A at 17.) Phillips contends that, two days after filing her February 8th complaint, she responded to the Assistant City

---

[5] Phillips claims her "advocate was not allowed in [the] meeting" with the panel (Docket Entry 1, Ex. A at 7), but she does not appear to base her claims on that allegation.

[6] It appears that the Assistant City Manger was referring to Phillips January 28th complaint for reduced hours, because Phillips does not use the term "complaint" to refer to any of her filings prior to the February 4th letter.

Manager by e-mail asking, "how assessment was made without [her] impute [sic] which is city policy." (Id., Ex. A at 18.)

Phillips alleges that, on March 10, 2009, she exchanged e-mails with Defendant's Human Resources Director regarding the grievance process and a possible meeting, but, the next day, the Assistant City Manager sent another e-mail to her explaining that "meetings should not be scheduled to address grievances" due to the filing of the EEOC charge. (Id., Ex. A at 7-8.) Phillips claims that she went to the City Manager's office on March 30, 2009, where she "discuss[ed] concerns and how concerns were being handled and policy was not being followed." (Id., Ex. A at 8.)

The Complaint asserts that, on April 2, 2009, the Department Director provided Phillips with "findings" that she had not satisfied the "threshold to support [her] claim that [sic] customer was creating unsafe work environment . . . ." (Id., Ex. A at 8.) Phillips, nevertheless, claims that the customer involved in the Incident was "confined" to one of the recreation centers, and she was "confined" to a different recreation center. (Id.) According to Phillips, on April 8, 2009, the customer was permitted to use the recreation center where Phillips was working; therefore, Phillips contacted her superiors and was instructed to leave. (Id., Ex. A at 9.) Phillips claims that, in April and May of 2009, she had discussions with her superiors and the Grievance Committee about the customer and her safety, while during that same period she simultaneously discussed settlement with Defendant's City

Attorney, the North Carolina Department of Labor, and the EEOC. (<u>Id.</u>, Ex. A at 9-10, 13-14.)

Phillips alleges that, on May 6, 2009, she met with the Grievance Committee, as part of Step III of the grievance process, but, at that time, "[n]o written reprimand could be located in [her] Personnel file" and "no evidence of retaliation could be substantiated." (<u>Id.</u>, Ex. A at 6 & 15.) She claims that the reprimand "had been changed to Progress Notes" and the Grievance Committee "recommended that the Progress Notes should not be part of [her] Personnel file." (<u>Id.</u>, Ex. A at 15-16.) In Phillips' view, her January 28th retaliation complaint, related to a reduction in working hours, was "not addressed" until later when she received a certified letter from the City Manager. (<u>Id.</u>, Ex. A at 16.)[7]

Phillips contends that, on May 12, 2009, the panel issued its "findings" which included a recommendation that Phillips' contact with "potential problem customers" be limited. (<u>Id.</u>, Ex. A at 9-11.) The Complaint states that, on May 21, 2009, Phillips had a meeting with Defendant's employees, including the City Manager, in accordance with Step IV of the grievance process where she sought to address various issues including "a safe environment free from racial harassment, harassment by co-workers, abusive behavior, intimidating and hostile work environment and violent behavior[,]"

---

[7] Phillips asserts that she "was not allowed [an] opportunity for procedure to take place" (Docket Entry 1, Ex. A at 16), but she has not clearly explained the "procedure" to which she is referring.

-5-

but the City Manager ignored her concerns. (<u>Id.</u>, Ex. A at 11.)
Phillips claims that, on June 1, 2009, she contacted the City
Manager to discuss the customer who was connected with the Incident
and, on June 8, 2009, Phillips received the City Manager's "final
determination." (<u>Id.</u>, Ex. A at 11-12.)[8]

According to the Complaint, on March 11, 2010, Phillips met
with an EEOC investigator, at which time she realized that a
"Progress Note form previously used in grievance hearing as part of
written reprimand" was not incorporated in her file. (<u>Id.</u>, Ex. A
at 19.) Phillips pleads that she sent an e-mail to Defendant's
Human Resources department to "ask about the Progress Notes being
allowed to be forwarded" and, on March 15, 2010, she received a
letter informing her that the "Progress Notes were submitted."
(<u>Id.</u>) She maintains that, on March 18, 2010, she filed a grievance
against "administration for forwarding documents to EEOC that were
not part of [her] Personnel file" and "[she] received [a] letter

---

[8] It appears that the City Manager's "final determination" relates to Step
IV of the grievance process, because Phillips has not alleged that the City
Manager was involved in any other process requiring a determination (<u>see</u> Docket
Entry 1, Ex. A at 3-11). According to Phillips, the City Manager responded:

"whenever you have different people trying to administer the same
policy there are going to be different interpretations based on the
respective individual's view of the world and their communication
skills. A person adept in dealing with difficult personalities is
likely to be less frustrated when incidents occur, and less likely
to recommend disciplinary action than one that may not have these
skills or may even have a personality that would elevate [sic] the
disagreement."

(Docket Entry 1, Ex. A at 11-12.)

from Human Resources Director denying right to move forward with grievance process." (<u>Id.</u>, Ex. A at 19-20.)

Phillips asserts that, on June 23 and 28, 2010, she "complained about [a supervisor's] unprofessional and abusive behavior" and, on July 14, 2010, she was "suspended for five days without pay" in response to her June 23rd complaint. (<u>Id.</u>, Ex. A at 20.) According to Phillips, on July 16, 2010, she filed a grievance related to the suspension and, on July 22, 2010, she met with the Department Director and Deputy Director, as part of Step II of the grievance process, regarding the suspension, but she was not satisfied with their decision. (<u>Id.</u>, Ex. A at 20.) She asserts that, on August 26, 2010, she met with the Grievance Committee, as a Step III grievance procedure and, on September 21, 2010, she was notified that the Grievance Committee recommended removing the suspension and issuing a written warning. (<u>Id.</u>, Ex. A at 20-21.) Phillips claims that, on September 22, 2010, she met with the City Manager, as part of Step IV of the grievance procedure and during the meeting:

> [T]he Hartsell Recreation Supervisor stated policy [sic] was not followed. [Phillips] asked supervisor why [Phillips] was suspended. Hartsell Recreation supervisor stated [Phillips] was offensive in informing supervisor that <u>by reducing hours</u>, a financial burden was being placed upon [Phillips] and food was being taken out of [her] children's mouths. . . . [Phillips] requested that the administration be investigated for unfair practices and not following city policy.

(<u>Id.</u>, Ex. A at 21-22 (emphasis added).) On October 28, 2010, Phillips notified Defendant that she was resigning. (<u>Id.</u>, Ex. A at 22.)

<u>B. Procedural Background</u>

On November 10, 2010, Phillips filed her Complaint against Defendant in the Superior Court of Cabarrus County, North Carolina. (Docket Entry 1, Ex. A at 1.)  The Complaint alleges the following causes of action: (1) unlawful retaliation in violation of Title VII (<u>id.</u> at 3-6); (2) unlawful discrimination in violation of Title VII (<u>id.</u> at 6-12); (3) "Failing and refusing to take corrective and appropriate action to remedy the situation or its effects of discrimination, racial harassment, hostile, and unsafe working environment" in violation of Title VII (<u>id.</u> at 12); (4) retaliation in violation of the North Carolina Retaliatory Employment Discrimination Act ("REDA") in the form of a written reprimand (<u>id.</u> at 12-13); (5) retaliation in violation of REDA in the form of reduced assignment of work hours (<u>id.</u> at 13-14); and (6) violation of City of Concord, North Carolina's "Harassment and Retaliation Policy in the City's Personnel Policy, Article 8 Section 7" (<u>id.</u> at 15-22).

Defendant was served with the Complaint on November 16, 2010. (Docket Entry 1 at 1; <u>see</u> <u>id.</u>, Ex. A at 1.)  On December 13, 2010, Defendant filed its Notice of Removal to Federal Court arguing that this Court has Federal Question jurisdiction, 28 U.S.C. § 1331, over this action, because this action "involves a civil suit for damages arising under [Title VII][.]" (Docket Entry 1 at 1-2.)  On December 21, 2010, Defendant filed its Answer.  (Docket Entry 5.)  On January 14, 2011, Phillips filed her Motion for Remand.  (Docket Entry 7.)  Defendant submitted its response on February 2, 2011

(Docket Entry 9) and, on February 23, 2011, Phillips filed a reply (Docket Entry 10).

## II. DISCUSSION

Phillips requests that "this action be remanded to the General Court of Cabarrus County, Superior Court Division . . . ." (Docket Entry 7 at 4.)

### A.  Standard for a Motion to Remand

"The burden of demonstrating jurisdiction resides with the party seeking removal." Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (internal quotation marks omitted). A federal court must "construe[s] removal jurisdiction strictly because of the significant federalism concerns implicated." Id. (internal quotation marks omitted).  If federal jurisdiction appears doubtful, then the federal court must remand the action to state court.  Id.

If a federal district court has original jurisdiction of a state court case, i.e., the case could have originally been filed in federal district court, then a defendant may remove that state court case to the federal district court embracing the place where the action is pending "[e]xcept as otherwise provided."  28 U.S.C. § 1441(a).  Federal district courts have original jurisdiction over civil actions involving diverse parties "where the amount in controversy exceeds the sum or value of $75,000[.]"  28 U.S.C. § 1332.  This Court's original subject matter jurisdiction also includes federal question claims: "[t]he district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal subject matter jurisdiction exists "in cases where federal law creates the cause of action." <u>Dixon</u>, 369 F.3d at 816 (emphasis and internal quotation marks omitted).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987). "[T]he plaintiff is the master of his complaint and generally [the well-pleaded complaint rule] permits plaintiffs to avoid federal jurisdiction by exclusive reliance on state law." <u>Custer v. Sweeney</u>, 89 F.3d 1156, 1165 (4th Cir. 1996) (internal quotation marks omitted). The "artful pleading doctrine" is an "independent corollary" to the well-pleaded complaint rule. <u>Rivet v. Regions Bank of La.</u>, 522 U.S. 470, 475 (1998). This doctrine allows removal of cases to the federal court "even though no federal question appears on the face of plaintiff's complaint" if a plaintiff omits "pleading necessary federal questions" or if "federal law completely preempts a plaintiff's state-law claim." <u>Id.</u> <u>Accord</u> <u>Advanced Sterilizer Dev. and Design, Inc. v. Roadway Express, Inc.</u>, No. 1:02CV285, 2002 U.S. Dist. LEXIS 24380, at *4 (M.D.N.C. Aug. 21, 2002) (Beaty, J.) (unpublished).

<u>B. Analysis</u>

Defendant contends that original jurisdiction exists in this Court "based on federal question jurisdiction invoked by Plaintiff's Title VII claim, pursuant to 28 U.S.C. § 1331, and this case is removable to Federal Court, pursuant to 28 U.S.C. § 1441(b)." (Docket Entry 9 at 4.) Phillips responds that the Court should exercise its discretion to remand this otherwise removable matter in that state law predominates, pursuant to 28 U.S.C. § 1441(c) or 28 U.S.C. § 1367. (<u>See</u> Docket Entry 10 at 1-2.)

Phillips also argues that: (a) jurisdiction is improper under 28 U.S.C. § 1332 (Docket Entry 7 at 3); (b) "removal will create [sic] financial hardship" (<u>id.</u>); (c) "Federal Courts other than the Supreme Court do not resolve Federal Law issues pending in State Court" (<u>id.</u> at 7); and (d) "defendant failed to answer [sic] complaint" (<u>id.</u>).

The Court first will address the arguments related to the basis for removal and discretionary remand and then will discuss Phillips' other arguments in support of her motion.

<u>1. Removal and Discretionary Remand</u>

<u>a. Original and Supplemental Jurisdiction</u>

Defendant argues that original jurisdiction exists "based on federal question jurisdiction invoked by Plaintiff's Title VII claim . . . ." (Docket Entry 9 at 4.) The Complaint alleges federal Title VII claims (<u>see</u> Docket Entry 1, Ex. A at 3-12), thus, a federal question appears on the face of the Complaint.

Phillips asserts that "[s]tate law predominates since the only federal claim invokes state law." (Docket Entry 10 at 1.)[9] The United States Court of Appeals for the Fourth Circuit has discussed scenarios in which a complaint that references federal law nonetheless may fail to raise a federal question in both <u>Mulcahey v. Columbia Organic Chems. Co.</u>, 29 F.3d 148, 152-53 (4th Cir. 1994), and <u>Dixon</u>, 369 F.3d at 816-17.

In <u>Mulcahey</u>, the plaintiffs brought an action alleging state claims including negligence per se based on the alleged violation of federal, state and local environmental laws, which the defendant removed to federal court. <u>Mulcahey</u>, 29 F.3d at 149-50. The Fourth Circuit reversed the district court's decision to retain jurisdiction over the case, because the plaintiffs' reference to federal environmental statutes in the state negligence claim did not support federal subject matter jurisdiction. <u>Id.</u> at 148-50, 154.

The Fourth Circuit observed that "the Plaintiffs could not proceed under [the federal statutes] because [they] failed to comply with the requirements of the statutes." <u>Id.</u> at 150 (internal quotation marks omitted). <u>Mulcahey</u> held that the "'presence of a claimed violation of the [federal] statute as an element of a state cause of action is insufficiently 'substantial'

---

[9] Phillips' assertion in this regard arises in connection with her argument in support of discretionary remand pursuant to 28 U.S.C. § 1441 (Docket Entry 10 at 1), nevertheless, the Court addresses the argument with respect to federal question jurisdiction, because the argument bears a logical relationship to the presence of original jurisdiction.

to confer federal question jurisdiction.'" *Id.* at 153 (citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 814 (1986)). The *Mulcahey* Court also recognized that "if a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist." *Id.* at 153. Therefore, *Mulcahey* also held that subject matter jurisdiction did not exist, because the plaintiffs' alternative federal theory was "not 'essential' to their negligence theory[.]" *Id.* at 154 (emphasis in original).

In *Dixon*, the Fourth Circuit further explained: "In other words, if the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purposes of *§ 1331*." *Dixon*, 369 F.3d at 816-17 (emphasis in original).

Phillips alleges her Title VII claims in three subparts. (*See* Docket Entry 1, Ex. A at 3-12.) Under subpart A, she alleges that Defendant took "retaliatory action against [her] for opposing employment practices[,]" and references the City of Concord's policy in stating that she reported the Incident to her supervisors in accordance with that policy: "It is Parks and Recreation Department's practice to outline offense according to Discipline Policy as well as recommend consequences according to Discipline Policy." (*Id.*, Ex. A at 3.) Moreover, under subpart C, Phillips' entire allegation appears as follows: "Failing or refusing to take corrective and appropriate action to remedy the situation or its

-13-

effect of discrimination, racial harassment, hostile, and unsafe working environment." (Id., Ex. A at 3.) Neither of these subparts allege a state theory of recovery.

Under subpart B, which Phillips alleges is related to her "discrimination charges against the employer[,]" Phillips states that she filed an EEOC charge alleging a Title VII violation for "retaliation by reducing hours, written reprimand, and refusal to meet with Plaintiff or follow City Policy and Parks and Recreation Discipline Policy, and advocating racial harassment." (Id., Ex. A at 6.) Additionally, she has alleged that "[t]he City's Workplace Violence Prevention Policy conflicts with State Law or Local Ordinance by failing and refusing to take corrective and appropriate action to remedy situation or its effects on Plaintiff in timely fashion." (Id., Ex. A at 8.) Phillips refers to the City of Concord's policies and generally refers to "State Law or Local Ordinance" (see id.), but those indefinite references do not indicate that the Title VII claims fail to raise a substantial federal question, or that an alternative state law theory exists. See Bryan v. Bellsouth Comm., Inc., 377 F.3d 424, 431 n.10 (4th Cir. 2004) ("None of these courts sought to conjure out of whole cloth an alternative theory of liability without some support in the allegations of the complaint, and we decline to do so here." (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 810 (1988); Dixon, 369 F.3d at 817-18; Mulcahey, 29 F.3d at 153)). Moreover, Phillips does not assert that she is otherwise unable to

proceed with her Title VII claims.  Thus, her Complaint's Title VII
claims arise under federal law.

Therefore, this Court has federal question jurisdiction over
this action, see 28 U.S.C. § 1331, and, as a result, Defendant
properly removed the case to this Court.

In her Reply, Phillips argues that "[a]lthough [she] has
alleged a Title VII cause of action in [sic] Complaint, state
claims do not arise out of 'the same case or controversy and are
not 'a common nucleus of operative fact [sic]." (Docket Entry 10
at 1.)  Defendant asserts that removal is proper in that "there is
but one 'wrong' complained of – the alleged retaliatory action
taken by Defendant after Plaintiff complained about the January 4,
2009 incident."  (Docket Entry 9 at 5.)

Pursuant to 28 U.S.C. § 1367(a), a federal district court may
exercise supplemental jurisdiction over state law claims if "they
form part of the same case or controversy under Article III of the
United States Constitution" as those claims that properly fall
within the court's original jurisdiction.   "And whether the
federal-law claims and State-law claims are part of the same case
is determined by whether they derive from a common nucleus of
operative fact and are such that a plaintiff would ordinarily be
expected to try them all in one judicial proceeding."   Hinson v.
Norwest Fin. S.C., Inc., 239 F.3d 611, 615 (4th Cir. 2001)
(internal brackets and quotation marks omitted).

Phillips' federal and state law claims rely on the same set of
facts.  (See Docket Entry 1, Ex. A at 3-22.)  Her state law claims

-15-

arise out of the same interrelated series of events as her federal claims in that her state law claims are premised upon actions or omissions by Defendant's employees in response to her complaints about the Incident or her subsequent related grievances or complaints (see Docket Entry 10 at 12-13, 15-17, 19-22), and much of that same conduct also forms the basis of her Title VII claims (id. at 3-12). Phillips neither identified any facts only associated with her state law claims, nor explained her reasoning to separately litigate those claims. (See Docket Entry 10 at 1-2.)[10] Therefore, the Court may exercise supplemental jurisdiction over Phillips' state law claims.

### b.  28 U.S.C. § 1441

Defendant argues that 28 U.S.C. § 1441 "does *not* authorize remand of federal claims" and that this case involves "one 'wrong'" which makes remand as to Phillips' state claims "inappropriate[.]" (Docket Entry 9 at 5 (emphasis in original).) Phillips, however, contends that, "because state law provides the basis for all but one of the claims listed in [sic] complaint, state law predominates

---

[10] Phillips asserts that:

There are separate causes of action appropriate for remand.  To the extent that Defendant is claiming that Removal of this case is appropriate due to pleading of [sic] federal claim, the only possible question that remained was whether there are separate and independent state law claims subject to remand.  This argument must fail.

(Docket Entry 10 at 2.)  However, Phillips' argument is conclusory and warrants no discussion.

and remand is appropriate under 1441." (Docket Entry 10 at 1.)[11]
She explains that "[s]tate law predominates since the only federal
claim invokes state law." (Id.)

> Section 1441 directs that:
>
> Whenever a <u>separate and independent</u> claim or cause of
> action within the jurisdiction conferred by section 1331
> of this title is joined with one or more otherwise
> non-removable claims or causes of action, the entire case
> may be removed and the district court may determine all
> issues therein, or, in its discretion, may remand all
> matters in which State law <u>predominates</u>.

28 U.S.C. § 1441(c) (emphasis added). "[Section 1441(c)] does not,
however, apply when pendant claims, as distinct from separate and
independent claims, are involved, because 'pendant claims are not
separate and independent within the meaning of the removal
statute." <u>Hinson</u>, 239 F.3d at 616 (internal quotation marks
omitted). <u>See also</u> <u>Baldwin v. Jarrett Bay Yacht Sales, LLC</u>, 683 F.
Supp. 2d 385, 393 (E.D.N.C. 2009) ("Where both federal and state
causes of action are asserted as result of a single wrong based on
a common event or transaction, no separate and independent federal
claim exists under *section 1441(c)*." (italics in original) (quoting
<u>In re City of Mobile</u>, 75 F.3d 605, 608 (11th Cir. 1996))).

As discussed in the foregoing subsection, Phillips' state law
claims are not separate and independent from her federal claims.
To the contrary, her claims "derive from a common nucleus of
operative fact" in that they are intertwined with the actions or

---

[11] Phillips' Reply utilizes formatting that includes the capitalization of
every letter in a sentence, and bolded and italicized font. (<u>See</u> Docket Entry
10.) For ease of reading, when quoting the Reply, this Court eliminates all
emphasis and uses capitalization which conforms to standard writing conventions.

omissions by Defendant's employees in response to Phillips' filing of the Incident complaint or her subsequent related grievances and complaints. (See supra pp. 15-16.) Therefore, remand of Phillips' state law claims based on 28 U.S.C. § 1441(c) is inappropriate. See Boyce v. Wachovia Sec., LLC, 5:09-CV-263-FL, 2010 U.S. Dist. LEXIS 30128, at *16 (E.D.N.C. Feb. 17, 2010) (unpublished) (finding that remand of plaintiffs' state law claims pursuant to § 1441(c) was "inappropriate" where court had found that state law claims arose from a "common nucleus of operative facts"), recommendation adopted, 2010 U.S. Dist. LEXIS 30131 (E.D.N.C. Mar. 29, 2010) (unpublished); Martin v. Lott, C/A No. 3:07-3782-JFA, 2009 U.S. Dist. LEXIS 118616, at *5-8 (D.S.C. Dec. 21, 2009) (unpublished) (having found that supplemental jurisdiction existed over state law claims, court found that remand of state claims based on Section 1441(c) was "inappropriate").[12]

### c.  28 U.S.C. § 1367

Pursuant to 28 U.S.C. § 1367, "[Phillips] requests [sic] court to examine whether the state claims substantially predominate in terms of proof, comprehensiveness of remedy sought, and the scope of the issues raised." (Docket Entry 10 at 1-2.)[13]  She argues

---

[12] In support of her argument for discretionary remand pursuant to 28 U.S.C. § 1441, Phillips asserts that "[s]tate law predominates since the only federal claim invokes state law." (Docket Entry 10 at 1.) The Court has already addressed this argument and will not reexamine her assertion again in this subsection.

[13] Phillips' request for remand, pursuant to 28 U.S.C. § 1367, does not clearly explain whether she seeks remand of all or only part of her claims. (See Docket Entry 10.)

that, "allowing [sic] state court to exercise jurisdiction over this [sic] claim will allow [sic] complaint to proceed as one case which would promote judicial economy, convenience, and fairness to litigants and eliminate the possibility of different outcomes." (<u>Id.</u> at 2.)

Section 1367(c) provides that a federal court may decline to exercise supplemental jurisdiction under certain circumstances, including the predominance of state law claims:

> (c) The district courts <u>may decline to exercise supplemental jurisdiction over a claim under subsection (a) if</u>—
>
>> (1) the claim raises a novel or complex issue of State law,
>>
>> (2) <u>the claim substantially predominates over the claim or claims over which the district court has original jurisdiction</u>,
>>
>> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>>
>> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367 (emphasis added).

Phillips' argument focuses on the second factor, i.e., that her state law claims predominate over the federal claims. (<u>See</u> Docket Entry 10 at 1-2.) "Predominance is assessed through a consideration of the proof offered on the asserted claims, the scope of the issues raised, and the comprehensiveness of the remedy sought." <u>Boyce</u>, 2010 U.S. Dist. LEXIS 30128, at *17; (<u>see also</u> <u>Deshazo v. Smith</u>, 1:05CV1046, 2005 WL 3416839, at *2 (E.D. Va. Dec. 8, 2005) (unpublished); <u>Bagley v. Provident Bank</u>, No. Civ. WDQ-05-

0184, 2005 WL 1115245, at *1 (D. Md. Apr. 26, 2005) (unpublished). The Fourth Circuit also has identified a separate predominance consideration: "The determination of whether a state claim predominates is not grounded in dollars and cents; the district court, when exercising its discretion, is invoking the abstention doctrine and must address federalism concerns about avoiding federal overreaching into highly specialized state enforcement or remedial schemes." White v. County of Newberry, S.C., 985 F.2d 168, (4th Cir. 1993) (citing Burford v. Sun Oil Co., 319 U.S. 315, 326-34 (1943)).

No such concerns exist in this case. Phillips has not made any showing that the proof for her federal and state claims would differ. (See Docket Entry 10 at 1-2.) To the contrary, the elements of a Title VII retaliation claim and a REDA claim are virtually identical. Compare Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) ("The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." (citing Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004))), with Smith v. Computer Task Group, Inc., 568 F. Supp. 2d 603, 613 (M.D.N.C. 2010) (Schroeder, J.) ("To state a claim under REDA, a plaintiff must show that (1) he exercised his right to engage in a protected activity, such as filing a workers' compensation claim; (2) he suffered an adverse employment action, and (3) a causal connection exists between the exercise of the protected activity

and the alleged retaliatory action." (citing <u>Wiley v. United Parcel Serv., Inc.</u>, 164 N.C. App. 183, 186, 594 S.E.2d 809, 811 (2004))). Moreover, Phillips has alleged that her supervisor's retaliatory conduct is an issue with respect to all of her causes of action (<u>see</u> Docket Entry 1, Ex. A at 3-22); as a result, remanding her state-law claims would waste judicial resources and require the parties' to duplicate their efforts in state and federal court.

Additionally, Phillips has failed to demonstrate that the issues in her state law claims are more complex or broad than her federal claims. As explained above, her federal and state claims appear strikingly similar in that they address whether Defendant's employees retaliated against Phillips in response to her filing of a safety complaint and/or grievances. The existence of these similarities among her claims creates the possibility of inconsistent results should her state claims be remanded. Moreover, Phillips has not set forth any distinctions between her state and federal remedies which would require remanding her state claims. (<u>See</u> Docket Entry 1, Ex. A at 23; Docket Entry 10 at 1-2.)

Furthermore, Phillips' state law claim premised upon the City of Concord's Harassment and Retaliation policy does not appear to involve any "highly specialized state enforcement or remedial schemes" that would prohibit this Court's review of that claim. Additionally, federal courts, including this Court, have examined REDA claims without any indication that North Carolina's interest in enforcement or the act's remedial scheme raise any "federalism concerns" or otherwise constitute a sufficient basis for remanding

the claim in the absence of the plaintiff's timely objections under the appropriate statutory section. <u>See, e.g.</u>, <u>Lunsford v. Cemex, Inc.</u>, 733 F. Supp. 2d 652, 655 (M.D.N.C. 2010) (Schroeder, J.) (denying plaintiff's motion to remand REDA action and finding plaintiff failed to timely invoke 28 U.S.C. § 1445(c) as basis for objecting to removal); <u>Blake v. Cree, Inc.</u>, 1:09CV807, 2010 U.S. Dist. LEXIS 3941, at *2-3 (M.D.N.C. Jan. 19, 2010) (unpublished) (Sharp, M.J.) (denying motion to remand where plaintiff's complaint included claims under Title VII and REDA); <u>Jenks v. USF Holland Inc.</u>, 3:09 CV 31, 2009 U.S. Dist. LEXIS 60954, at *1-7 (W.D.N.C. June 29, 2009) (unpublished) (finding removal of plaintiff's REDA claim appropriate, because it was combined with federal Fair Labor Standards Act claim); <u>but see</u>, <u>Wiley v. United Parcel Serv., Inc.</u>, 227 F. Supp. 2d 480, 483 & 488 (M.D.N.C. 2002) (Osteen, J.) (where plaintiff challenged court's jurisdiction based on 28 U.S.C. § 1445(c), court remanded case to state court).[14]   Therefore, Phillips' state law claims do not predominate over her federal claims for purposes of 28 U.S.C. § 1367(c)(2).

Moreover, an examination of the other factors in section 1367(c) does not support remand. The first factor requires that the state law claims raise a "novel or complex issue of State

---

[14] Phillips has not sought remand of her REDA claim pursuant to 28 U.S.C. § 1445(c) (<u>see</u> Docket Entries 7 & 10), and has waived any argument under that provision by failing to raise it within 30 days after Defendant filed the Notice of Removal. <u>See</u> <u>Lunsford</u>, 733 F. Supp. 2d at 655 ("Courts have uniformly held . . . that an improperly removed case that arises under a state's workers' compensation law is a procedural defect in removal that is waived unless asserted within thirty days of removal.").

law[,]" 28 U.S.C. § 1367(c)(1); however, as the prior discussion reflects, federal courts have routinely addressed REDA claims and thus Phillips' REDA claim does not present a novel or complex issue better suited for North Carolina state courts. In addition, Phillips makes no showing that her claim premised on the City of Concord's policy raises any "novel or complex issue[s] of State law[,]" 28 U.S.C. § 1367(c)(1). (See Docket Entries 7 & 10.) The third factor is inapplicable in that the Court has not "dismissed all claims over which it has original jurisdiction[,]" 28 U.S.C. § 1367(c)(3).

Finally, the fourth factor requires "exceptional circumstances" and "other compelling reasons for declining jurisdiction[,]" 28 U.S.C. § 1367(c)(4), but Phillips has not shown "exceptional circumstances" or reasons which compel this Court to decline jurisdiction (see Docket Entries 7 & 10). Given that Phillips' federal and state claims involve the same facts and alleged offensive actions or omissions on behalf of Defendant's employees, the Court cannot find that either judicial economy, convenience, or fairness to litigants supports remanding Phillips' claims. See United Mine Workers v. Gibbs, 338 U.S. 715, 726 (1966) ("It has consistently been recognized that pendant jurisdiction is a doctrine of discretion, not plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even

-23-

though bound to apply state law to them." (internal citation omitted)).

Accordingly, the Court finds no basis to remand Phillips' state law claims pursuant to section 1367(c).

### 2.  Phillip's Other Arguments for Remand

Phillips asserts four other grounds to support her motion for remand.  (See Docket Entry 7 at 3, 7.)

### a.  28 U.S.C. § 1332

Phillips directs her first argument to whether jurisdiction exists under 28 U.S.C. § 1332, stating that: "because defendant lacks diversity of citizenship, original jurisdiction under 28 U.S.C. 1332(a)(1) does not apply[;]" "defendant did not assert the basis for the removal as [sic] amount in controversy exceeds $75,000[;]" and "removal by an in-state defendant is a procedural defect, not jurisdictional."  (Docket Entry 7 at 3.)  Defendant removed this case pursuant to federal question jurisdiction, 28 U.S.C. § 1331.  (Docket Entry 1 at 2.)  Therefore, Phillips' arguments directed to 28 U.S.C. § 1332 lack merit.

### b.  Financial Hardship

Phillips claims that "removal will create [sic] financial hardship" (Docket Entry 7 at 3), but she cites no authority that the financial burden of litigating this action represents a consideration for the Court upon a motion to remand (see id.). Moreover, even if Phillips' finances constituted a relevant consideration, she has not shown how litigating in this Court would impose a greater burden than state court litigation.  (See id.)

-24-

### c. Supreme Court Jurisdiction

Next:

> Plaintiff asserts as a general rule, Federal Courts other than the Supreme Court do not resolve Federal Law issues pending in State Court and [sic] expressly gives jurisdiction to the State Court and provides that no case arising under its provisions brought in a State Court of competent jurisdiction shall be removed to any court of the United States. Defendants [sic] Personnel Policies organized under laws of North Carolina.

(Docket Entry 7 at 7.) Phillips may have misconstrued the following statutory language governing the United States Supreme Court's review of matters by writ of certiorari from the highest court of a state:

> (a) <u>Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question</u> or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

28 U.S.C. § 1257(a). As previously explained, this Court has jurisdiction under 28 U.S.C. § 1331.

### d. Defendant's Alleged Failure to Answer Complaint

Finally, "[Phillips] alleges defendant failed to answer [sic] complaint received by defendant on November 16, 2010. [She] alleges this to be a Procedural Defect by not filing a timely request to extend time to answer or by admitting or denying complaint within the thirty days of [her] filing." (Docket Entry 7 at 7.)

Federal Rule of Civil Procedure 81, the source of the
deadlines related to filing an answer after removal, instructs:

> **(2) Further Pleading.** After removal, repleading is
> unnecessary unless the court orders it. A defendant who
> did not answer before removal <u>must</u> answer or present
> other defenses or objections under these rules within the
> longest of these periods:
>
>> (A) <u>21 days after receiving — through service or
>> otherwise — a copy of the initial pleading stating
>> the claim for relief</u>;
>>
>> (B) <u>21 days after being served with the summons for
>> an initial pleading on file at the time of service</u>;
>> or
>>
>> (C) <u>7 days after the notice of removal is filed</u>.

Fed. R. Civ. P. 81(c)(2) (bold emphasis in original, underlined
emphasis added). Defendant states that it was served with the
Complaint on November 16, 2010 (Docket Entry 1 at 1) and Defendant
filed its Notice of Removal on December 13, 2010 (<u>see</u> <u>id.</u> at 2).
Under these circumstances, it appears the latest date Defendant
could have filed its Answer fell on December 20, 2010, but
Defendant filed its Answer on December 21, 2010 (Docket Entry 5 at
13). Nevertheless, Phillips does not cite and the Court has not
identified any authority for the proposition that Defendant's
belated filing of its Answer deprives this Court of original
jurisdiction otherwise conferred by 28 U.S.C. § 1331, or
constitutes a separate reason to remand this action.

## III. CONCLUSION

Phillips's Complaint alleges federal causes of action under
Title VII over which this Court has original jurisdiction, pursuant
to 28 U.S.C. § 1331, and, therefore, Defendant properly removed

this matter to this Court.  Moreover, because Phillips' state law claims arise out of the "the same case or controversy" as her Title VII claims, the Court may exercise supplemental jurisdiction over those state law claims.  Discretionary remand pursuant to section 1441 is inappropriate, because Phillips' state law claims do not constitute "separate and independent" claims.  Additionally, the Court declines to order discretionary remand pursuant to 28 U.S.C. § 1367(c), because Phillips' state law claims do not predominate over her federal claims and she has not otherwise shown the existence of any other basis, under that section, which supports remand.

**IT IS THEREFORE ORDERED** that Phillips' Motion for Remand (Docket Entry 7) is **DENIED**.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 12, 2011