IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LATANGELA PHILLIPS,           )
                              )
              Plaintiff,      )
                              )
     v.                       )          1:10CV947
                              )
CITY OF CONCORD,              )
                              )
              Defendant.      )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendant City of Concord's Motion for Summary Judgment Pursuant to Rule 56 (Docket Entry 44). (See Docket Entry dated Jan. 15, 2013.) For the reasons that follow, the instant Motion should be granted.

## I. Background

Plaintiff, an African-American female, brings this suit pro se against the City of Concord ("the City")[1] asserting claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the North Carolina Retaliatory Employment Discrimination Act ("REDA"), and the City's Harassment

---

[1]     Plaintiff initially brought this suit against the City of Concord Parks and Recreation Department. (See Docket Entry 2 at 1.) She later moved to amend the Complaint to substitute the City of Concord as the sole Defendant in place of the City of Concord Parks and Recreation Department (Docket Entry 20), which the Court allowed (Docket Entry 24).

and Retaliation Policy, as well as for emotional harm. (Docket Entry 2.)

The City "is a municipal corporation" that "maintains several departments, including the City of Concord Parks and Recreation Department." (Docket Entry 45-1 at 2.) "At the time of the allegations of the Complaint, Plaintiff [] was a part time employee of the City's Parks and Recreation Department []." (Id.) On January 4, 2009, Plaintiff reported a problem with a customer at a city recreation facility who directed threatening and racially derogatory comments at Plaintiff. (Docket Entry 2 at 2; see also Docket Entry 45-4 at 2-5.) Plaintiff requested meetings with various supervisors over the next several days to discuss the incident and what steps the facility would take. (Docket Entry 2 at 3-4; see also Docket Entry 45-6 at 2.) On January 16, 2009, "Plaintiff reported [the] incident to the City's Safety Manager due to lack of support from [the facility's] administration and [its] failure to follow [the] Discipline Policy." (Docket Entry 2 at 4.) Also on January 16, 2009, Plaintiff's supervisor, Martha Hagood, reprimanded Plaintiff (Docket Entry 45-2 at 9), an action Plaintiff alleges was "in retaliation of [sic] [Plaintiff's] Safety Complaint reported earlier" that day (Docket Entry 2 at 4; see also Docket Entry 45-3 at 2). On January 22, 2009, "Plaintiff filed a Grievance with the Human Resources [sic] due to lack of support

from administration pertaining to [the] incident report on January 4, 2009," and to "dispute [the] written reprimand" from Hagood. (Docket Entry 2 at 5; see also Docket Entry 45-3 at 2.)

Plaintiff participated in meetings with supervisors as part of the grievance procedure in late January, but Plaintiff "was not satisfied with the findings" (namely the failure of the City to ban the customer from all its facilities). (Docket Entry 2 at 5.) In early February of 2009, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race and sex, as well as retaliation. (Docket Entry 45-8 at 4.) The charge alleged that Plaintiff was "written up" and her "work hours were reduced" in retaliation for pursuing complaints about the abusive customer. (Id.)

On April 2, 2009, "Plaintiff received [the] findings of [the late January meetings] from [the] Department Director stating Plaintiff had not provided the necessary threshold to support Plaintiff's claim that [the] customer was creating [an] unsafe work environment consistent with City policy." (Docket Entry 2 at 7; see also Docket Entry 45-1 at 4-5.) That same day, Plaintiff submitted a complaint form to the North Carolina Department of Labor alleging that she received a written warning, harassment, a reduction in hours, and a work location change because she "complained about a safety issue, filed grievances, [and] filed [with the] EEOC." (Docket Entry 45-11 at 4-5.)

3

Plaintiff subsequently instituted this action asserting that the City violated Title VII by: "taking retaliatory action against Plaintiff for opposing employment practices that Plaintiff reasonably believes are prohibited by Title VII" (Docket Entry 2 at 2-5); retaliating against Plaintiff "for filing discrimination charges against the [City]" (id. at 5-11); and "[f]ailing and refusing to take corrective and appropriate action to remedy the situation or its effects of discrimination, racial harassment, hostile, and unsafe working environment" (id. at 11). The Complaint further alleges that the City violated REDA by retaliating against Plaintiff via written reprimand after she "report[ed] workplace violence and racial harassment and hostile work environment" (id. at 11-12) and via reduction of her work hours (id. at 12). The Complaint also alleges that "the City has discriminated against Plaintiff . . . in violation of [the] City's Harassment and Retaliation Policy by [] failing and refusing to take corrective and appropriate action to remedy the situation and its effects on the Plaintiff . . . ." (Id. at 14-21.) Finally, the Complaint apparently alleges claims for "INTENTIONAL INFLICTION OF EMOTION HARM, AND NEGLIGENT INFLICTION OF EMOTIONAL HARM AND PERSONAL INJURY." (Id. at 22 (capitalization in original).)

The matter now comes before the undersigned United States Magistrate Judge on the City's instant Motion for Summary Judgment (Docket Entry 44) which seeks a finding in the City's favor as to

4

all of Plaintiff's claims (<u>id.</u> at 1-3). The Clerk mailed Plaintiff a letter explaining that she had "the right to file a 20-page response in opposition to [the City's instant Motion]." (Docket Entry 46 at 1.) The letter specifically cautioned Plaintiff that her "failure to respond or, if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that the [City's] contentions are undisputed and/or that [Plaintiff] no longer wish[es] to pursue the matter. Therefore, unless [she] file[s] a response in opposition to the [City's] motion, it is likely [her] case will be dismissed or summary judgment granted in favor of the [City]." (<u>Id.</u>) Despite these warnings, Plaintiff has not responded to the instant Motion. (<u>See</u> Docket Entries dated Sept. 26, 2012, to present.)[2]

## II.  Summary Judgment Standard

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a genuine dispute exists if the evidence presented could lead a reasonable factfinder to return a verdict in favor of

---

[2] Although Plaintiff did not file a response to the instant Motion, her Complaint is verified (<u>see</u> Docket Entry 2 at 23) and therefore constitutes an affidavit for the purposes of summary judgment, see <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge."); <u>Henley v. Novant Health, Inc.</u>, No. 1:12-CV-62, 2013 WL 424695, at *1 (M.D.N.C. Feb. 4, 2013) (Eagles, J.) (unpublished) (citing same).

5

the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  In making this determination, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

The party moving for summary judgment may discharge its burden by identifying an absence of evidence to support the non-moving party's case.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  The non-moving party then must "set forth specific facts showing that there is a *genuine issue for trial*." <u>Matsushita Elec. Indus.</u>, 475 U.S. at 586-87 (citation omitted) (emphasis in original).  In this regard, the non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. <u>Anderson</u>, 477 U.S. at 252 (citation omitted); <u>see also</u> <u>Francis v. Booz, Allen & Hamilton, Inc.</u>, 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

## III.  Title VII Claims

To establish discrimination or retaliation in employment under Title VII, a plaintiff may proceed "in one of two ways.  First, he may present direct evidence of his superiors' discriminatory [or retaliatory] intent.  Second, he may attempt to satisfy the test

6

specified in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which allows him to raise an inference of discriminatory intent by showing that he was treated worse than similarly situated employees of other [relevant groups]." Sterling v. Tenet, 416 F.3d 338, 345 (4th Cir. 2003) (internal parallel citation omitted).[3] Plaintiff does not argue that the record contains direct evidence of discrimination based on race or gender and/or retaliation for complaining about such discrimination. (See Docket Entry 2.) Accordingly, she must satisfy the McDonnell Douglas test, which first requires proof of a prima facie case. See Coleman v. Maryland Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010), aff'd in other respects, ___ U.S. ___, 131 S. Ct. 1327 (2012).

"[T]he elements of a prima facie case of discrimination . . . are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Id. "The elements of a prima facie retaliation claim . . . are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Id.[4] "'If a prima facie case

---

[3]    Although McDonnell Douglas arose in the discrimination context, its framework also applies to retaliation claims. See Hawkins v. Pepsico, Inc., 203 F.3d 274, 281 n.1 (4th Cir. 2000).

[4]    "[P]rotected activity" consists of "[o]pposition activity [which] encompasses . . . voicing one's opinions in order to bring attention to an employer's discriminatory activities . . . [and]

7

is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory [or non-retaliatory] reason for the adverse employment action.' If the employer meets that burden of production, 'the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination [or retaliation].'" <u>Adams v. Trustees of the Univ. of N.C. – Wilmington</u>, 640 F.3d 550, 558-59 (4th Cir. 2011) (internal citation omitted) (quoting <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)); <u>accord</u> <u>Hoyle v. Freightliner, LLC</u>, 650 F.3d 321, 337 (4th Cir. 2011) ("If a plaintiff puts forth sufficient evidence to establish a prima facie case of retaliation and a defendant offers a non-discriminatory explanation for his termination, the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext." (internal quotation marks omitted)).

### *A. Discrimination*

Plaintiff's discrimination claim alleges that the City "fail[ed] and refus[ed] to take corrective and appropriate action to remedy the situation [with the allegedly abusive customer] or its effects of discrimination, racial harassment, hostile, and

---

[p]articipation activity [which] encompasses . . . making a charge, testifying, or participating in any manner in a Title VII investigation, proceeding, or hearing." <u>Kubicko v. Ogden Logistics Servs.</u>, 181 F.3d 544, 551 (4th Cir. 1999) (internal quotation marks omitted).

unsafe working environment." (Docket Entry 2 at 11.) Although Plaintiff has shown membership in a protected class, she has failed to produce evidence sufficient to make out the other three elements of a prima facie case of discrimination. As a result, this claim fails as a matter of law.

## i. Satisfactory job performance

Plaintiff's Complaint does not allege that she was performing her job satisfactorily during the period in which she alleges the discrimination occurred. (See Docket Entry 2.) Moreover, record evidence indicates Plaintiff's supervisor, Hagood, "counseled [Plaintiff] on multiple occasions in November 2008 about her lateness and the clock in policy." (Docket Entry 45 at 21; see also Docket Entry 45-2 at 2-3, 6-7.) The record further reflects that Plaintiff "violated the same policies" in January of 2009 by arriving to work late and without her ID badge, resulting in her receipt of a verbal and a written reprimand concerning those problems on January 16, 2009. (Docket Entry 45 at 21; see also Docket Entry 45-2 at 3, 9.) At no point has Plaintiff contested this evidence.

## ii. Adverse employment action

Plaintiff has not shown that she suffered an adverse employment action. "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen &

9

Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) (internal quotation marks omitted).  The Complaint's only allegations potentially related to the terms, conditions, and benefits of Plaintiff's employment concern: (1) the City's failure to ban the offending customer from all fitness facilities; (2) Hagood's written reprimand; and (3) a reduction in Plaintiff's hours.  As to the first of these matters, the record gives no indication that the City's allegedly insufficient action affected the terms, conditions, or benefits of Plaintiff's employment.  In fact, the City took steps to minimize Plaintiff's contact with the customer in question.  (See Docket Entry 45-1 at 5 (indicating that Director of Parks and Recreation Department "requested that [customer] confine his visits to Academy Recreation Center, except he could attend his son's basketball games at other locations, and that [Plaintiff] would be scheduled to work at Logan and Hartsell Recreation Centers so that direct contact between [Plaintiff] and [customer] would be limited").)[5]  Although Plaintiff alleged that the customer later once appeared at the facility at which she was working (see Docket Entry 2 at 8), Plaintiff has not shown that any further altercations occurred (see id. at 2-11).  Nor does the

_____

[5]     To the extent that limiting Plaintiff to two of the three facilities affected Plaintiff's employment, the City presented a nondiscriminatory reason for its decision, as discussed below in connection with the City's pretext argument, infra, Section III.D., namely limiting future encounters between Plaintiff and the customer (see Docket Entry 45-1 at 5).

10

record indicate that the City's handling of this matter otherwise affected the terms, conditions, or benefits of Plaintiff's employment.

Likewise, Plaintiff presented no evidence that Hagood's written reprimand of Plaintiff for tardiness affected the terms, conditions, or benefits of Plaintiff's employment, such as by limiting her opportunities for advancement or raises. (See id.) As a result, the Court should follow unpublished opinions of the Fourth Circuit and published opinions from other courts holding that such reprimands fail to provide a basis for a discrimination claim under Title VII. See, e.g., Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene, 317 F. App'x 351, 353 (4th Cir. 2009) ("The district court properly determined that [the plaintiff] failed to state a claim of disparate treatment [based on race, gender, and national origin] . . . . [A]ctions complained of by [the plaintiff], such as . . . reprimands . . . do not constitute adverse employment actions."); Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1058 (8th Cir. 2007) ("[The plaintiff] also argues that [the defendant] discriminated against him when [it] issued him a written reprimand. Like the district court, we reject this theory because the reprimand was not an adverse employment action. A reprimand is an adverse employment action only when the employer uses it as a basis for changing the terms or conditions of the employee's job for the worse. The reprimand did not affect

11

[the plaintiff's] terms and conditions of employment, so he cannot make out a prima facie case on this claim." (internal citations omitted)); Grube v. Lau Indus., Inc., 257 F.3d 723, 729 (7th Cir. 2001) (affirming grant of summary judgment for employer on sex discrimination claim and declaring that "unfair reprimands . . . ., unaccompanied by some tangible job consequence, do not constitute adverse employment actions"); Johnson v. Danzig, No. 99-2614, 213 F.3d 631 (table), 2000 WL 458887, at *2 (4th Cir. 2000) (unpublished) ("[The plaintiff's] claims of racial discrimination fail for the same reasons, specifically that the letters of reprimand and admonishment . . . are not actionable adverse employment actions . . . ."); Braswell v. Allen, 586 F. Supp. 2d 1297, 1305-06 (M.D. Ala. 2008) (finding "reprimand does not constitute an adverse employment action sufficient to establish a prima facie case of discrimination" where plaintiff presented "no evidence that the reprimand led to tangible harm in the form of a loss of pay or benefits, or lost opportunity for a job promotion").[6]

---

[6] These rulings cohere with published decisions by the Fourth Circuit explaining that Title VII's anti-discrimination provision does not reach all acts by employers. See James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 378-79 (4th Cir. 2004) ("Congress in Title VII did not want to tolerate invidious discrimination on the part of companies that merely falls short of the ultimate sanction of dismissal. At the same time, the . . . statute's wording makes clear that Congress did not want the specter of liability to hang over every personnel decision."); Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999) ("Congress did not intend Title VII to provide redress for trivial discomforts

Finally, Plaintiff's Complaint alleges that the City reduced her hours (Docket Entry 2 at 6, 7) and her EEOC charge states that her work hours for February 2009 had "been reduced from approximately 19+ hours a week to four hours a week" (Docket Entry 45-8 at 4). However, the City provided evidence, including a chart of employees' work hours from December 2008 through May 2009, which shows that Plaintiff's hours did not decrease in February 2009. (See, e.g., Docket Entry 45-1 at 12.) In both January 2009 and February 2009, Plaintiff worked approximately 12-14 hours per week. (See id.) For a two-week period in March 2009, her weekly average dropped to just over 8 hours per week, but went back up the next two-week period to 15 hours per week. (See id.) Plaintiff may have worked only 4 hours during one of the weeks in the two-week period in March, given that the record only contains the bi-weekly average; however, as discussed below, Plaintiff has presented no evidence to show that similarly situated employees did not experience similar variations in hours.

---

endemic to employment . . . ."); Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) ("Disparate treatment theory as it has emerged in application of . . . Title VII . . . has consistently focused on the question whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating. . . . [T]here are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions of . . . Title VII.").

*iii. Different treatment from similarly situated employees*

The final element of a Title VII prima facie claim of discrimination requires a showing of "different treatment from similarly situated employees outside the protected class." Coleman, 626 F.3d at 190 (emphasis added). Plaintiff alleges she received fewer work hours than other similarly situated part-time employees. (See Docket Entry 45-9 at 2-3.) However, she acknowledges that all of the employees to whom she compares herself were (like Plaintiff) African-American (Docket Entry 45-15 at 2) and at least one was (like Plaintiff) female (Docket Entry 45-9 at 2; see also Docket Entry 45-1 at 12). Further, the chart listing employees' work hours shows that average hours varied by pay period for all employees, often as much as they varied for Plaintiff in March 2009. (Docket Entry 45-1 at 12.) In addition, during the two-week period in which Plaintiff only averaged 8 hours per week, the average for all employees was at its lowest for all periods shown. (Id.) Thus, the record does not permit a finding that the City treated Plaintiff less favorably than employees outside her protected class(es) or even other similarly situated employees in general.

*B. Hostile Work Environment*

Plaintiff's Complaint arguably alleges race and sex discrimination in the form of a hostile work environment, see E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167, 174 (4th

14

Cir. 2009) ("Title VII makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race or sex. Since an employee's work environment is a term or condition of employment, Title VII creates a hostile work environment cause of action." (internal citations and quotation marks omitted)). In order to prevail on such a claim, Plaintiff must show the underlying conduct was "(1) unwelcome, (2) based on [Plaintiff's] gender or race, (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) imputable to [the City]." Id. at 175. Assuming Plaintiff can meet the first and second elements, a reasonable factfinder neither could determine that the conduct of which Plaintiff complains altered the conditions of her employment nor could impute such conduct to the City. Accordingly, any hostile work environment claim fails as a matter of law.

*i. Sufficiently severe or pervasive conduct*

For harassing conduct to qualify as sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment, Plaintiff must show (1) she actually perceived the harassment as "sufficiently abusive or hostile" and (2) the "gender- or race-based harassment was objectively severe or pervasive." Id. at 176. In other words, this element contains "both subjective and

15

objective components." Id. at 175. Assuming Plaintiff has shown she subjectively perceived a sufficiently abusive and hostile work environment, a reasonable factfinder could not find the alleged misconduct sufficiently severe or pervasive as an objective matter.

The objective analysis of severity and pervasiveness depends on "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). Although this standard "surely prohibits an employment atmosphere that is permeated with discriminatory intimidation, ridicule, and insult, it is equally clear that Title VII does not establish a general civility code for the American workplace." Id. (internal citation and quotation marks omitted). "'[I]n order to be actionable, the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'" Id. (alterations in original) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

Plaintiff points to only one instance where a customer directed racial or gender-based abuse at her. (See Docket Entry 45-4 at 2.) The Fourth Circuit has noted that "rude treatment by [coworkers]," Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006),

16

"callous behavior by [one's] superiors," <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003), or "a routine difference of opinion and personality conflict with [one's] supervisor," <u>Hawkins v. PepsiCo, Inc.</u>, 203 F.3d 274, 276 (4th Cir. 2000), do not meet the severe or pervasive standard. In the instant case, the single altercation between Plaintiff and the abusive customer and the City's subsequent refusal to ban the customer from all recreation facilities do not create a sufficiently severe and pervasive hostile work environment as to sustain a Title VII claim. Further, as discussed above, <u>see</u> <u>supra</u>, Section III.A.ii., Plaintiff has presented no evidence that the terms or conditions of her employment otherwise changed as a result of the conduct of the customer or the City.

*ii. Imputable to the City*

An employer is liable for harassment by others only "if it knew or should have known about the harassment and failed to take effective action to stop it." <u>Sunbelt</u>, 521 F.3d at 319 (internal quotation marks omitted). Once the employer has notice, "it must respond with remedial action reasonably calculated to end the harassment." <u>Id.</u> (internal quotation marks omitted). In the instant case, far from failing to act, once it learned of the incident, the City convened a panel "to review [Plaintiff's] complaint and hear from various witnesses." (Docket Entry 45-1 at 4-5.) That panel determined that "the threshold necessary to

17

support [Plaintiff's] claim that [the customer] was creating an unsafe work environment had not been met." (Id. at 5.) Despite that finding, the Director of the Parks and Recreation Department "requested that [the customer] confine his visits to Academy Recreation Center, except he could attend his son's basketball games at other locations, and that [Plaintiff] would be scheduled to work at Logan and Hartsell Recreation Centers so that direct contact between [Plaintiff] and [the customer] would be limited." (Id.) The record contains no evidence that would permit a finding other than that the City took action reasonably calculated to address the matter about which Plaintiff complained.

### C. Retaliation

The City has shown the absence of any genuine dispute as to any material fact with respect to Plaintiff's retaliation claim(s) and the record, even viewed in the light most favorable to Plaintiff, confirms the City's entitlement to judgment as a matter of law. More specifically, Plaintiff's retaliation claim fails on multiple elements of the prima facie case.

#### i. Protected activity

Title VII makes it unlawful for an employer to retaliate against an employee because said employee "has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title

18

VII]." 42 U.S.C. § 2000e-3(a) (emphasis added). As the City points out, Plaintiff claims the City retaliated against her for filing a grievance concerning unsafe work conditions. (See Docket Entry 45 at 12; see also Docket Entry 2 at 2-5; Docket Entry 45-7 at 2; Docket Entry 45-14 at 2-3 ("Q. Is it your understanding that Title VII prohibits discrimination if you report an unsafe work environment? A. No. I – what I understand is they prohibit – well, yeah, they prohibit retaliation, yes, yes. Or they prohibit retaliation for reporting it. Q. About reporting the unsafe work environment? A. Yes.").)

Title VII does not create a cause of action for unsafe work conditions. See, e.g., Gurish v. Ohio Dep't Of Mental Retardation and Developmental Disabilities, No. 1:10CV02292, 2012 WL 3649359, at *2 (N.D. Ohio Aug. 23, 2012) (unpublished) ("Plaintiff alleged within his EEOC charge that he was retaliated against 'after reporting an unsafe work environment.' . . . Plaintiff's actions for which he alleges retaliation within his EEOC charge are not considered protected activity under Title VII . . . ."); Harper v. Hunter Coll., No. 95 CIV. 10388 (JFK), 1999 WL 147698, at *3 (S.D.N.Y. Mar. 15, 1999) (unpublished) (finding plaintiff does not state claim for retaliation for "whistleblowing in connection with his report of unsafe working conditions" because "whistleblowing activity of this nature is not protected under Title VII" (internal quotation marks omitted)). To the extent Plaintiff bases her

19

retaliation claim(s) on her reports of an unsafe work environment, her claim(s) must fail.

## ii. Adverse action/causal link

Adverse actions that would not support a Title VII discrimination claim may still warrant relief in the retaliation context. See Brockman v. Snow, 217 F. App'x 201, 205-06 n.3 (4th Cir. 2007) (acknowledging Supreme Court's ruling in Burlington N. & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), that "a different - and less strenuous - standard is used to define adverse employment actions in the retaliation context"). More specifically, adverse actions sufficient to support a retaliation claim are "not limited to discriminatory actions that affect the terms and conditions of employment." Burlington, 548 U.S. at 64. Rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (internal quotation marks omitted); see also A Society Without A Name v. Virginia, 655 F.3d 342, 352 (4th Cir. 2011) (same). In addition, to satisfy the causal link element of the prima facie case, "the employer must have taken the adverse . . . action because the plaintiff engaged in a protected activity." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original).

20

In the instant case, Plaintiff has not presented evidence that would allow a reasonable factfinder to conclude that a causal link exists between any protected activity by Plaintiff and conduct by the City that would have dissuaded a reasonable employee from making a charge of discrimination.  First, as discussed above, the City has submitted undisputed evidence showing that it did not reduce Plaintiff's hours more than similarly situated employees. (<u>See</u> Docket Entry 45-1 at 12.)  Furthermore, "[c]ourts within the Fourth Circuit have generally found that actions which essentially amount to criticism of an employee such as negative performance evaluations, reprimands or warnings, and counseling are alone insufficient to constitute materially adverse employment actions under the *Burlington* standard."  <u>Christy v. City of Myrtle Beach</u>, No. 4:09-cv-1428-JMC-TER, 2011 WL 4808193, at 21 (D.S.C. Jul. 27, 2011) (unpublished) (citing cases); <u>see also</u> <u>Taylor v. Geithner</u>, 703 F.3d 328, 338 (6th Cir. 2013) ("Although certain written reprimands could rise to the level of an adverse employment action, the written reprimands given here would not have dissuaded a reasonable worker from making a claim of discrimination.  There is no evidence in the record that any disciplinary action resulted from these letters, or that these letters were related to a larger pattern of intimidation by constantly reprimanding [the plaintiff], for example."); <u>Bhatti v. Trustees of Boston Univ.</u>, 659 F.3d 64, 73

(1st Cir. 2011) (finding reprimands not materially adverse because "none carried with it any tangible consequences").

In the instant case, nothing in the record suggests that the written reprimand Plaintiff received constituted anything more than criticism of her performance or that, even if unjustified, it constituted more than a "minor annoyance[]," <u>Burlington</u>, 548 U.S. at 68. However, in one unpublished opinion, the Fourth Circuit has stated that "issuing an official reprimand and declining to renew [a plaintiff's] appointment are adverse employment actions; both would dissuade 'a reasonable worker from making or supporting a charge of discrimination.'" <u>Belyakov v. Leavitt</u>, 308 F. App'x 720, 729 (4th Cir. 2009) (quoting <u>Burlington</u>, 548 U.S. at 57). Assuming that Hagood's written reprimand qualifies as a materially adverse action for purposes of a retaliation claim, uncontested record evidence indicates that Hagood prepared the reprimand before Plaintiff complained about the City's handling of her report about the customer. (<u>See</u> Docket Entry 45-1 at 3.) Where adverse action commences before the protected activity, no causal link exists between the adverse action and the protected activity. <u>See</u> <u>Newby v. Whitman</u>, 340 F. Supp. 2d 637, 660-61 (M.D.N.C. 2004); <u>see also</u> <u>Dowe</u>, 145 F.3d at 657 (holding that the plaintiff could not make out causation element of retaliation claim absent evidence that "relevant decisionmaker" knew of protected activity at time of

22

adverse action). Plaintiff's retaliation claim thus fails as a matter of law.

### *D. Pretext*

Even if Plaintiff had established a prima facie case of discrimination and/or retaliation, the City has provided nondiscriminatory and nonretaliatory reasons for the actions it took. The City undertook a thorough review of the incident between Plaintiff and the customer. (<u>See</u> Docket Entry 45-1 at 3-5.) Although Plaintiff asserts that the City should have banned the customer from all facilities (<u>see</u> Docket Entry 2 at 2-3, 4), the City provided evidence that the customer in question communicated with various officials about the incident (and "indicated that [Plaintiff] had harassed and targeted him" (Docket Entry 45-1 at 4)) and that, based on its investigation, the City determined that no disciplinary action was necessary (<u>see</u> <u>id.</u> at 3-5). Despite that finding, the City took steps to minimize the likelihood of similar encounters in the future by requesting that the customer generally confine his visits to one facility and scheduling Plaintiff's shifts at the others. (<u>Id.</u> at 5.) Furthermore, the City explained that Hagood issued the reprimand to Plaintiff because Plaintiff was late to her shift on several occasions and violated clock-in procedures. (Docket Entry 45 at 23; <u>see also</u> Docket Entry 45-2 at 2-9.) Therefore, "the burden shifts back to [Plaintiff] to prove by a preponderance of the evidence that the

23

[City's] stated reasons were not its true reasons, but were a pretext for discrimination [or retaliation]." <u>Adams</u>, 640 F.3d at 558-59 (internal quotation marks omitted). Plaintiff has failed to present any evidence to contradict the City's explanations for its actions. This failure also warrants entry of judgment for the City on Plaintiff's Title VII claims.

## IV.  REDA Claims

"The North Carolina legislature enacted REDA to provide workers with a method to remedy unsafe and illegal working conditions without being punished by their employer." <u>Jurrissen v. Keystone Foods, LLC</u>, No. 1:08CV128, 2008 WL 3925086, at *4 (M.D.N.C. Aug. 20, 2008) (Dixon, M.J.) (unpublished). In relevant part, REDA prohibits employers from "discriminat[ing] or tak[ing] any retaliatory action against an employee because the employee in good faith does or threatens to . . . file a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to [certain statutes]." N.C. Gen. Stat. § 95-241(a)(1).[7] REDA, much like Title VII, requires that an employee receive a right-to-sue letter from an administrative agency before commencing an action against an employer in court. N.C. Gen. Stat. § 95-243(a). Said action "shall be commenced by an employee within 90

---

[7]  The Complaint does not reference any of the statutes addressed in REDA. (<u>See</u> Docket Entry 2 at 11-13.)

days of the date upon which the right-to-sue letter was issued . . . ." N.C. Gen. Stat. § 95-243(b).

As the City points out, the North Carolina Department of Labor issued Plaintiff's right-to-sue letter as to her REDA claim on January 8, 2010. (Docket Entry 45 at 25 (citing Docket Entry 45-12 at 2).) Thus, Plaintiff had 90 days, or until April 8, 2010, to file a REDA claim against the City. However, Plaintiff did not institute this action until November 10, 2010 - some seven months after the deadline. (Id. (citing Docket Entry 2 at 1).) Because Plaintiff did not file her REDA claim within the 90-day window, it fails as a matter of law on untimeliness grounds. See, e.g., Parks v. Thomas Built Buses, Inc., No. 102CV00595, 2003 WL 22705389, at *1 (M.D.N.C. Oct. 8, 2003) (unpublished).

## V.  Discrimination in Violation of City Policy

Plaintiff's Complaint appears to assert a claim for discrimination "in violation of [the] City's Harassment and Retaliation Policy . . . ." (Docket Entry 2 at 14.) The City argues that this claim "should be dismissed because such claim is not a cognizable claim under North Carolina or federal law." (Docket Entry 45 at 27.) Research has revealed no authority recognizing a cause of action for an employer's violation of its own policies. In such circumstances, "'[a]bsent a strong countervailing federal interest, the federal court . . . should not elbow its way into this controversy to render what may be an

25

uncertain and ephemeral interpretation of state law.'" <u>Time Warner</u> <u>Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership</u> <u>Corp.</u>, 506 F.3d 304, 314 (4th Cir. 2007) (alterations in original) (quoting <u>Mitcheson v. Harris</u>, 955 F.2d 235, 238 (4th Cir. 1992)); <u>see also</u> <u>Boyd v. Wilmington Police Dep't</u>, 439 F. Supp. 2d 343, 344 (D. Del. 2006) (granting summary judgment in favor of defendant because city's equal employment opportunity policy created no private cause of action). The Court thus should enter judgment as a matter of law against Plaintiff on this claim.

## VI. Emotional Harm Claims

In its final section, entitled "CLAIMS FOR DEMAND BY THE PLAINTIFF," Plaintiff's Complaint states, "PLAINTIFF CLAIMS IN THE AMOUNT OF $150,000 (ONE HUNDRED AND FIFTY THOUSAND DOLLARS) FOR PUNITIVE DAMAGES. PLAINTIFF REQUESTS THIS CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL HARM, AND NEGLIGENT INFLICTION OF EMOTIONAL HARM AND PERSONAL INJURY." (Docket Entry 2 at 22 (capitalization in original).) The Complaint provides no facts in support of these claims. (<u>See</u> <u>id.</u>)

A prima facie case of intentional infliction of emotional distress requires "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." <u>Dickens v. Puryear</u>, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). A plaintiff likewise must allege severe emotional distress to support a claim of negligent infliction of emotional

distress.  See <u>Johnson v. Ruark Obstetrics & Gynecology Assocs.,</u> <u>P.A.</u>, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).  "In this context, the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so."  <u>Id.</u> The record contains no evidence that Plaintiff suffered from any such condition as a result of the alleged events.  Thus these claims fail as a matter of law.

### VII.  Conclusion

Plaintiff has not presented evidence that would permit a reasonable factfinder to return a verdict in her favor as to her claims under federal or state law.

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion for Summary Judgment (Docket Entry 44) be granted.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 9, 2013